**IT IS ORDERED as set forth below:**



Date: September 24, 2019

_____
Susan D. Barrett
United States Bankruptcy Judge
Southern District of Georgia

_____

```
            IN THE UNITED STATES BANKRUPTCY COURT

                         FOR THE

                SOUTHERN DISTRICT OF GEORGIA
                       Augusta Division

IN RE:                        )       Chapter 13 Case
LEON LEE LEWIS and            )       Number 19-10999
TAWANDA ROBERTS LEWIS,        )
                              )
         Debtors              )
_____)
```

## ORDER AND OPINION

Before the Court is Leon and Tawanda Lewis' ("Debtors") Amended Motion to Extend the Automatic Stay and Cadles of West Virginia, LLC's ("Cadles") Response and Motion to Dismiss Case. This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (G), and (O) and the Court has jurisdiction pursuant to 28 U.S.C. §1334.

## FINDINGS OF FACT

Debtors filed this bankruptcy case within 180 days of

AO 72A
(Rev. 8/82)

their voluntary dismissal of their previous bankruptcy. Through a consent order in the previous case ("2016 Bankruptcy"), relief from the stay was granted to Cadles on February 25, 2019 as to the property at 2834 Cranbrook Drive, Hephzibah, Georgia 30815 (the "Property"). Chapter 13 Case No. 16-10309, Dckt. No. 68.

Cadles' foreclosure sale on the Property was scheduled for August 6, 2019. On August 1, 2019, Debtors voluntarily dismissed their 2016 Bankruptcy. Chapter 13 Case No. 16-10309, Dckt. Nos. 70-71. Then, on Sunday, August 4, 2019, two days before the scheduled foreclosure, Debtors filed this current bankruptcy. Chapter 13 Case No. 19-10999, Dckt. No. 1. Cadles filed a motion for expedited hearing on its motions to confirm inapplicability of the automatic stay and to dismiss the case.[1] Chapter 13 Case No. 19-10999, Dckt. Nos. 7-8 and 22-23.

Debtors acknowledge the procedural facts, but argue they fell behind on payments when Mr. Lewis became ill. They contend Mr. Lewis has now sufficiently recovered to be able to make the payments and that their current case is filed in good faith and should be allowed to proceed. Conversely, Cadles argues Debtors

---

[1] After the expedited hearing, the Court entered an order modifying the automatic stay to permit Cadles to cry the foreclosure sale, reserving all other rights and arguments. Chapter 13 Case No. 19-10999, Dckt. No. 18.

are ineligible to be debtors and their case should be dismissed.

## CONCLUSIONS OF LAW

Section 109(g)(2) of the Bankruptcy Code provides:

> (g) Notwithstanding any other provision of this section, no individual . . . may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> .
> .
> .
>
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. §109(g)(2).

There is a split of authority interpreting §109(g)(2). One line of cases strictly and broadly applies §109(g)(2) finding the language clearly and unambiguously requires dismissal whenever a debtor refiles for bankruptcy within 180 days after voluntarily dismissing a prior case where a motion for relief had been filed. See generally In re Richardson, 217 B.R. 479 (Bankr. M.D. La. 1998)(detailing the various tests); In re Tooke, 149 B.R. 687 (M.D. Fla. 1992); In re Harris, 2005 WL 6487200 (Bankr. N.D. Ga. July 29, 2005). Other courts adopt various tests. Some follow the strict approach, but find the court has discretion to consider other factors when the application of the strict approach results in

3

unjust or absurd outcomes. See generally In re Luna, 122 B.R. 575 (B.A.P. 9th Cir. 1991); In re Hutchins, 303 B.R. 503 (Bankr. N.D. Ala. 2003). Other courts hinge the outcome upon the definition of the word "following." See generally Richardson, 217 B.R. at 483-84. Some of these courts define "following" as used in §109(g)(2) to mean "after," but only dismiss the case if the preceding motion for relief was pending at the time of the dismissal. See Id. at 484. Other courts define "following" in §109(g)(2) to mean "because of" or having a causal connection. See generally Id. at 483-84; In re Bullock, 2008 WL 7880894 (Bankr. N.D. Ga. Nov. 18, 2008); In re Sole, 233 B.R. 347 (Bankr. E.D. Va. 1998); In re Duncan, 182 B.R. 156 (Bankr. W.D. Va. 1995); In re Copman, 161 B.R. 821 (Bankr. E.D. Mo. 1993).

After considering the matter and evidence in the current case, the Court is inclined to follow the line of cases applying the strict interpretation unless it leads to an unjust or absurd result. However, for the reasons discussed below, the Court need not expressly choose between the various interpretations other than to hold that §109(g)(2)'s scope is not limited to cases where a motion for relief remains pending at the time of the voluntary dismissal.

Debtors clearly fail the strict approach as a motion for

relief from stay was filed in their prior case, and Debtors voluntarily dismissed and refiled this case within 180 days from the dismissal. The strict approach notes debtors are in control of filing a motion to voluntarily dismiss their case and the plain language of §109(g)(2) bars such debtors refiling within 180 days. See generally Richardson, 217 B.R. at 492.

The Court recognizes, given the typical length of chapter 13 plans (3 to 5 years) and the array of scenarios that arise, the strict interpretation may sometimes produce seemingly unjust and absurd results. See Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004)("It is well established that 'when the statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms.'")(quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U.S. 1, 6 (2000)). For example, a creditor may file a motion for relief that is withdrawn, or denied on its merits, and under the strict approach, a debtor would fall within the scope of §109(g)(2) if they subsequently voluntarily dismissed their case. Or, one creditor could file a motion for relief and fully satisfy its debt, and debtor would fall within the strict interpretation of §109(g)(2) upon an unrelated creditor's motion to dismiss in a subsequent case. Or, a motion for relief

could be filed and granted early in a case and a few years later a debtor voluntarily dismisses their case for reasons unrelated to the motion and such a debtor would fall within the strict interpretation of §109(g)(2). See In re Harris, 2005 WL 6487200, at *6 (Bankr. M.D. Ga. July 29, 2005)(setting forth examples).

Even if the Court considers the equitable factors approach, Debtors in this case fail to prevail. Section 109(g)(2) was adopted to stop abusive debtors from preventing creditors from recovering their collateral. See Duncan, 182 B.R. at 159 (citing S. Rep. No. 65, at 74 (1983)("The purpose of [§109(g)][2] is to provide the court with greater authority to control abusive multiple filings.")). Debtors here previously consented to relief. On the eve of foreclosure, Debtors dismissed and refiled in an effort to forestall the foreclosure and have another opportunity to rework this debt while in the subsequent bankruptcy. The Court finds this is the exact conduct §109(g)(2) prevents.

Debtors also fail the approach defining "following" to mean "because of" or requiring a causal connection or nexus between the dismissal and the filing of the subsequent case. In this case there clearly is a causal connection between the motion for relief

---

[2] Section 109(f) became §109(g) with the 1986 amendments to the Bankruptcy Code.

and the dismissal, because Debtors dismissed the 2016 Bankruptcy and refiled the current case in an effort to forestall the impending foreclosure sale.

Finally, Debtors argue this Court should follow the line of cases requiring a motion for relief to be pending on the court's docket at the time of the dismissal for §109(g)(2) to apply. Debtors cite Judge Davis' In re Milton, 82 B.R. 637 (Bankr. S.D. Ga. 1988) contending courts in this district have traditionally followed the "pending" line of cases. Debtors argue since Cadles' motion for relief was granted in the previous case, the motion was no longer pending and §109(g)(2) is inapplicable. Following this analysis, Debtors argue their current bankruptcy case has been filed in good faith and that Mr. Lewis' improved health and new job demonstrates a substantial change in circumstances and a likelihood this current case will be successful. Therefore, Debtors contend they should be allowed to proceed with this current chapter 13.

This Court disagrees with the conclusion that §109(g)(2) only applies as long as a motion for relief is "pending" at the time of the dismissal. This Court finds §109(g)(2)'s use of "following" does not equate to "after as long as the motion for relief is still "'pending.'" See Richardson, 217 B.R. at 484. Section 109(g)(2) was intended to prevent abusive multiple filings

7

by debtors seeking to thwart creditors from recovering their property. It is counterintuitive that Congress would favor creditors with unadjudicated motions for relief over those with favorable adjudications. Also, if Congress intended to limit the application of §109(g)(2) to filed but unresolved motions for relief it clearly knows how to draft such provisions. In fact, §109(g)(2) actually uses the term "pending" in its opening paragraph "in a case pending under this title" and uses "following the filing of a request for relief." 11 U.S.C. §109(g)(2).

Furthermore, after reviewing Milton and Judge Davis' subsequent cases analyzing Milton, this Court disagrees with Debtors' interpretation of Milton. First, Judge Davis recognized the split of authority as to whether a good faith standard should be read into §109(g). See Milton, 82 B.R. at 639. Second, Judge Davis held ". . . [d]ebtors' subsequent dismissal and refiling of this Chapter 13 case does not violate the provisions of [§]109(g) because as of the date of the refiling there was, legally speaking, no pending motion for relief from stay that was unresolved in the previously filed and dismissed Chapter 13 case." Id. at 640 (emphasis added).

Each of Judge Davis' §109(g)(2) cases cited by the parties involved unique facts and circumstances. As Judge Davis noted:

> My holdings in <u>Milton</u> and <u>Murray</u> constitute narrow exceptions to a mechanical application of subsection (g)(2). They do not, however, require 'discretionary' findings. Rather, they require simple inquiries, the answers to which determine eligibility: whether the debtor had notice of the filing of the motion for relief prior to requesting dismissal, and whether the motion for relief was <u>fully resolved</u> at the time the debtor requested dismissal. The first inquiry prevents an unconstitutional result, and the second prevents an absurd result. In this case, <u>however, to permit a general inquiry into Debtor's 'intent' to escape the bar of §109(g)(2), where he was acting with full knowledge of the pending motion for relief would amount to judicial legislation</u>.

In re Stuart, 297 B.R. 665, 670 (Bankr. S.D. Ga. 2003)(emphasis added). <u>See also</u> In re Murray, Chapter 13 Case No. 86-00325 (Bankr. S.D. Ga. Aug. 21, 1986). In the current case, the motion for relief was not "fully resolved" as Cadles was in the process of foreclosing when Debtors dismissed the 2016 Bankruptcy and filed the instant case. This is precisely what §109(g)(2) prevents.

The conclusion that §109(g)(2) applies to the Debtors may be harsh, but it is not an absurd or unjust result. Section 109(g)(2) sets forth a fairly mechanical application and highlights the difficult policy considerations Congress weighed involving debtors and creditors rights when drafting the Code and §109(g)(2).

For these reasons, Cadles' Motion to Dismiss is ORDERED GRANTED and Cadles may proceed with recording its deed under power.

[END OF DOCUMENT]